**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **JEROME GREEN, # M17555,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:26-cv-00421-GCS** |
| | ) | |
| **C/O HOUSE,** | ) | |
| **MENARD CORRECTIONAL CENTER,** | ) | |
| **(Second Shift C/Os),** | ) | |
| **and NURSE MORGAN,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

Plaintiff Jerome Green is an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Western Illinois Correctional Center. He brings this civil action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights while he was confined at Menard Correctional Center ("Menard"). He claims Defendants denied and delayed necessary medical and mental health care, housed him in an unsanitary cell, and retaliated against him. Plaintiff seeks monetary damages.

Plaintiff's Complaint is now before the Court for preliminary review under 28 U.S.C. § 1915A, which requires the Court to screen prisoner complaints to filter out non-meritorious claims.[1] *See* 28 U.S.C. § 1915A(a). Any portion of the Complaint that is

---

[1] The Court has jurisdiction to screen the Complaint due to Plaintiff's consent to the full jurisdiction of a Magistrate Judge (Doc. 5), and the limited consent to the exercise of Magistrate Judge jurisdiction as set forth in the Memoranda of Understanding between this Court, Wexford Health Sources, and the IDOC.

legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* Complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

Plaintiff alleges in early 2023 at Menard, he asked Defendant C/O House to summon a mental health crisis team for him. (Doc. 1, p. 3).[2] Plaintiff, who is seriously mentally ill, was confined in a cell with a steel door and no air circulation, causing him to suffer from depression and anxiety. House refused because Plaintiff had previously filed grievances against him. After House's denial, Plaintiff injured himself by punching the wall. (Doc. 1, p. 8-9).

Plaintiff also complained to House that his cell was contaminated with mold and feces on the wall, and he lacked cleaning supplies, which created a risk of infection to Plaintiff's neck wound. (Doc. 1, p. 3). House responded that he didn't give a damn and walked away. Between August 25, 2023, and November 3, 2023, Plaintiff was in an unsanitary cell and was not given proper medical treatment, making his neck condition (involving a keloid) worse. (Doc. 1, p. 5).

Plaintiff asked House in early 2023 to summon medical attention because the open wound on his neck was infected and was draining pus, causing severe pain to Plaintiff's neck, face, and head. (Doc. 1, p. 3). Plaintiff also asked several nurses for help with this

---

[2] Plaintiff attaches a grievance noting House denied him a crisis team on August 25, 2023. (Doc. 1-1, p. 4).

condition. On several occasions, House directed the nurses not to give Plaintiff any medical attention – again, in retaliation for Plaintiff's prior grievances. House told Plaintiff that as long as he had a say-so, Plaintiff would be almost dead before he received treatment. (Doc. 1, p. 4). After many days without medical attention, Plaintiff's infection became worse and began bleeding. He was not seen by medical staff until weeks later, when his pain and drainage had increased.

On or about November 3, 2023, a nurse gave Plaintiff an antibiotic but did not provide him supplies for dressing changes. (Doc. 1, p. 4). On November 17, 2023, while Plaintiff was in restricted housing, Defendant Nurse Morgan on the 3:00-11:00 shift told Plaintiff he cried too much and gave him "Island" sterile 6x6 dressing for his neck wound. Plaintiff told Morgan he could not use the dressing because when it was removed, it would take off his skin and create further damage to his neck wound. He told Morgan the doctor issued a permit for transparent film sterile dressing for that reason. (Doc. 1, p. 4-5). Morgan still gave Plaintiff the Island dressing and said she was not the doctor and did not care if he turned pink by pulling the dressing off. House escorted Morgan to Plaintiff's housing area and influenced Morgan to deny proper medical treatment. Plaintiff's wound became worse because of Morgan's deliberate indifference.

The doctor ordered twice-daily dressing changes for Plaintiff's neck wound. (Doc. 1, p. 6). However, only the first shift officers took Plaintiff to the nurse's station for dressing changes; the second shift officers refused to follow the doctor's order. Plaintiff asked various second shift officers for their names, but they removed their name tags and refused to identify themselves. As a result, Plaintiff was forced to wear a bloody dressing

for an entire day until the first shift officers returned. This condition attracted bugs and caused altercations with his cellmate.

On June 24, 2024, Plaintiff finally had surgery for removal of the keloid on his neck. (Doc. 1, p. 5).

## PRELIMINARY DISMISSALS

Plaintiff cannot maintain his suit for damages against Defendant Menard Correctional Center. A state governmental agency such as the Illinois Department of Corrections and the prisons it manages are not "persons" that can be sued for civil rights violations under § 1983. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). *See also Billman v. Indiana Dept. of Corrections*, 56 F.3d 785, 788 (7th Cir. 1995) (noting that state Department of Corrections is immune from suit by virtue of Eleventh Amendment); *Hughes v. Joliet Correctional Center*, 931 F.2d 425, 427 (7th Cir. 1991) (same).

Plaintiff states he included Menard as a defendant because he wants to hold the various unknown second shift officers liable for refusing to follow orders to provide wound dressing changes. (Doc. 1, p. 6). A plaintiff may proceed against an unknown individual by designating them as John or Jane Doe and providing identifying information that could lead to discovering the individual's name. He cannot bring a claim against a vague, undefined group of people, but must make plausible allegations against individuals. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For these reasons, Menard Correctional Center will be dismissed from the action.

## DISCUSSION

Based on the allegations in the Complaint, the Court designates the following

claims in this *pro se* action:

Count 1: Eighth Amendment deliberate indifference to mental health needs claim against House for failing to summon a mental health team for Plaintiff in early 2023.

Count 2: Eighth Amendment claim against House for confining Plaintiff in a cell contaminated with mold and human waste between August 25, 2023, and November 3, 2023.

Count 3: Eighth Amendment deliberate indifference to serious medical needs claims against House for preventing Plaintiff from obtaining medical care, and against Morgan for ignoring the doctor's order and giving Plaintiff the wrong wound dressing in November 2023.

Count 4: First Amendment retaliation claim against House for denying Plaintiff mental health and medical care because Plaintiff filed grievances against House, and against Morgan for furthering the retaliation by denying Plaintiff proper medical care.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard**.[3]

**Official Capacity Claims**

Plaintiff raises claims against each defendant in his or her individual and official capacities. (Doc. 1, p. 1). However, Plaintiff's claims for monetary damages may only be pursued against state officials in their individual capacities. *See Brown v. Budz*, 398 F.3d

3 *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

904, 918 (7th Cir. 2005); *Shockley v. Jones*, 823 F.2d 1068, 1070 (7th Cir. 1987). Accordingly, the official capacity claims against the individual defendants are dismissed without prejudice.

**Count 1**

Prison officials and medical staff violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical or mental health needs. *See Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state such a claim, a prisoner must plead facts and allegations suggesting that (1) he suffered from an objectively serious medical or mental health condition, and (2) the defendant acted with deliberate indifference to his medical needs. *Id.* Deliberate indifference is demonstrated where a prison official acted or failed to act despite his/her knowledge of a serious risk of harm. *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994).[4]

Plaintiff alleges he was on the mental health case log, designated as seriously mentally ill, and suffered from depression and anxiety. It appears he had an objectively serious mental health condition. He claims House denied him a crisis team on more than one occasion, and Plaintiff harmed himself after House refused to summon a crisis team. The deliberate indifference claim in Count 1 may proceed against House.

---

[4] Plaintiff also invokes the Fourteenth Amendment in connection with his claims. His Fourteenth Amendment claims are dismissed as duplicative of the Eighth Amendment claims. *See, e.g.*, *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (noting that claims are to be analyzed under the most explicit sources of constitutional protections) (citing *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)).

**Count 2**

Prison conditions that deprive inmates of basic human needs – food, medical care, sanitation, or physical safety – may violate the Eighth Amendment. *See Rhodes v. Chapman*, 452 U.S. 337, 346-347 (1981). To state an Eighth Amendment claim for unconstitutional conditions of confinement, Plaintiff must plead facts suggesting he was denied "the minimal civilized measure of life's necessities," creating an excessive risk to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). He must also sufficiently plead that the defendant exhibited deliberate indifference to a substantial risk of serious harm to the inmate, despite the defendant's knowledge of the conditions. *See Farmer*, 511 U.S. at 837, 842. For a defendant to be personally liable under § 1983, the individual "must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005).

Plaintiff's description of being confined in a cell contaminated with feces and mold for over two months, while he had an open wound and had no access to cleaning supplies, amounts to an objectively serious deprivation. He alleges House was aware of the conditions and refused to correct the problems. Count 2 may also proceed against House.

**Count 3**

Under the standards discussed in Count 1, Plaintiff sufficiently states a claim against House for deliberate indifference to his need for medical care for his infected neck wound. While Morgan did not deny Plaintiff all medical care, he alleges Morgan knowingly ignored the doctor's specific order to provide him with wound dressing

material that would not cause his skin to peel off. The deliberate indifference claims in Count 3 may proceed against House and Morgan.

Plaintiff states he seeks to hold Wexford Health Sources, Inc. ("Wexford") liable because Morgan was under a contract with Wexford. (Doc. 1, p. 7). However, Plaintiff failed to include Wexford among the defendants. Even if he had done so, Plaintiff cannot maintain a claim against Wexford merely because it employed an individual medical provider. A corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *See Woodward v. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). Plaintiff includes no such allegation, thus any claim against Wexford is dismissed without prejudice.

**Count 4**

Prison officials may not retaliate against inmates for exercising their First Amendment rights to file grievances, lawsuits, or otherwise complain about their conditions of confinement. *See Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002). To state a retaliation claim, a prisoner must allege that he engaged in some protected First Amendment activity (for example, filing a grievance or otherwise complaining about conditions of confinement) and that prison officials took adverse action against him because he engaged in the protected activity. *See Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014); *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226

F.3d 568, 573 (7th Cir. 2000) (citation omitted).

Here, Plaintiff alleges he filed grievances against House, which prompted House to retaliate by denying Plaintiff's requests for a mental health crisis team and for medical care. Plaintiff further claims that Morgan denied him proper medical care under the influence of House, thus participating in the retaliation. Count 4 sufficiently states a retaliation claim against House and Morgan.

## DISPOSITION

The Complaint states colorable claims in Counts 1 and 2 against House, and in Counts 3 and 4 against House and Morgan. Defendant Menard Correctional Center is **DISMISSED** from the action with prejudice.

The Clerk shall prepare for C/O House and Nurse Morgan: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for

sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. § 1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. PROC. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED: August 14, 2026.**

Gilbert C. Sison

Digitally signed by Judge Sison
Date: 2026.08.14 12:23:18 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**

## NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so**.